**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-01496-DDD-SBP

IRIS F. MACIAS, LORINE GUMONE, and
BILLIE MILHAM, individually and on
behalf of all others similarly situated,

Plaintiffs,

v.

SISTERS OF CHARITY OF LEAVENWORTH
HEALTH SYSTEM, THE BOARD OF
DIRECTORS OF THE SISTERS OF CHARITY
OF LEAVENWORTH HEALTH SYSTEM,
THE DEFINED CONTRIBUTION INVESTMENT
COMMITTEE OF THE SISTERS OF CHARITY
OF LEAVENWORTH HEALTH SYSTEM, and
JOHN DOES 1-30,

Defendants.

---

**ORDER ON MOTION TO BIFURCATE DISCOVERY**

---

**Susan Prose, United States Magistrate Judge**

This matter is before the court on Defendants Sisters of Charity of Leavenworth Health System ("SCL Health"), the Board of Directors of the Sisters of Charity of Leavenworth Health System (the "Board"), and the Defined Contribution Investment Committee of The Sisters of Charity of Leavenworth Health System's (the "Committee") (collectively, "Defendants") Motion to Bifurcate Discovery and Set Deadlines for Dispositive Motions Relating to Causation and Loss (the "Motion"), filed on January 21, 2026. ECF No. 80. This Motion was referred to the undersigned United States Magistrate Judge by the Honorable Daniel D. Domenico on January

22, 2026, pursuant to 28 U.S.C. § 636(b)(1). ECF No. 81. Plaintiffs Iris F. Macias, Lorine Gumone, and Billie Milham, who bring claims individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), are opposed. ECF No. 82. Having carefully taken into account the Motion and its associated briefing, the applicable law, the entire docket, and the oral arguments by the parties on April 21, 2026, *see* ECF No. 84, the court respectfully **DENIES** the Motion for the reasons below.

## BACKGROUND

This putative class action involves claims for breach of fiduciary duties under §§ 409 and 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1109, 1132. *See* ECF No. 59 ("Second Amended Complaint" or "SAC").

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). To that end, the statute "imposes participation, funding, and vesting requirements on pension plans," and "also sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility, for both pension and welfare plans." *Id.* at 90-91. "An ERISA fiduciary must discharge [their] responsibility 'with the care, skill, prudence, and diligence' that a prudent person acting in a like capacity and familiar with such matters would use." *Tibble v. Edison Int'l*, 575 U.S. 523, 528 (2015) (quoting 29 U.S.C. § 1104(a)(1)). This fiduciary duty of prudence "derive[s] from the common law of trusts." *Id.* "Under the duty of prudence, an ERISA fiduciary must consider 'those facts and circumstances that, given the scope of such fiduciary's investment duties, the fiduciary knows or should know are relevant to the particular investment or investment course of action involved.'" *Enstrom v. SAS Inst. Inc.*, 820 F.

Supp. 3d 410, 419 (E.D.N.C. 2026) (quoting 29 C.F.R. § 2550.404a-1(b)(1)(i)); *see also Stegemann v. Gannett Co., Inc.*, 970 F.3d 465, 473 (4th Cir. 2020). To establish a breach of this fiduciary duty, a plaintiff must show that "the defendant acted as a fiduciary, breached its fiduciary duties, and thereby caused a loss to the Plan." *See Acosta v. Finishing Pros., LLC*, No. 18-cv-00978-RPM-NYW, 2018 WL 6603641, at *5 (D. Colo. Nov. 20, 2018) (citing *Pegram v. Herdrich*, 530 U.S. 211, 223-26 (2000)), *report and recommendation adopted*, 2019 WL 13214043 (D. Colo. Jan. 17, 2019); *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

Defendant SCL Health is a multi-state, faith-based nonprofit healthcare organization, ECF No. 59 ¶ 23, and Plaintiffs, who bring this action individually and on behalf of all others similarly situated,[1] are former SCL Health employees, *see id.* ¶¶ 18-20, 42. During their employment, each Plaintiff participated and invested in three "defined contribution"[2] retirement plans offered by SCL Health: the SCL Health 401(k) Retirement Savings Plan ("401(k) Plan"), the SCL Defined Contribution Plan ("DC Plan"), and the SCL Health Retirement Savings Plan ("403(b) Plan") (collectively, "Plans").[3] *Id.* ¶¶ 18, 19, 20. Plaintiffs assert that, during the relevant time period, all of Defendants were, by virtue of their direct or indirect control of the

---

[1] Alternatively, Plaintiffs bring this as a derivative action on behalf of the Plans, ECF No. 59 at 11 n.9, which is permitted by ERISA, 29 U.S.C. § 1132(d)(1).

[2] A defined contribution plan "provides for individual accounts for each participant and for benefits based solely upon the amount contributed to those accounts for each participant and any income, expense, gains and losses, and any forfeitures of accounts of the participants which may be allocated to such participant's account." ECF No. 59 ¶ 42.

[3] In 2021, Defendants merged the DC Plan into the 401(k) Plan and, additionally, terminated the 403(b) Plan. ECF No. 59 at 1 nn.1-2. Following the 403(b) Plan's termination, its assets were transferred to the 401(k) Plan. *See id.* at 1 n.2.

Plans, fiduciaries within the meaning of ERISA and, as a result, owed fiduciary duties to the Plans' participants and beneficiaries. *Id.* ¶¶ 23-34; *see also* 29 U.S.C. §§ 1002(21)(A) (defining fiduciary), 1104(a) (describing scope of fiduciary duty of prudence).

In the Second Amended Complaint, Plaintiffs contend that Defendants breached their fiduciary duties under ERISA by, "*inter alia*, failing to objectively and adequately review the Plans' investment portfolio with due care to ensure that each investment option was prudent, in terms of performance." ECF No. 59 ¶ 12. Specifically, Plaintiffs allege that Defendants selected a "materially underperforming" series of retirement funds for inclusion in the Plans and then failed to review or otherwise remove the funds despite their ongoing, patent underperformance. *Id.* ¶¶ 54-135. Plaintiffs claim that the Committee's "mismanagement of the Plans, to the detriment of participants and beneficiaries, constitute[d] a breach of the fiduciary duty of prudence" and, further, "cost the Plans and [their] participants tens of millions of dollars." *Id.* at ¶ 13; *see also id.* ¶¶ 136-43. Plaintiffs further claim that SCL Health and the Board breached their fiduciary duty "to monitor the Committee Defendants and ensure that the Committee Defendants were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plans." *Id.* ¶¶ 144-50.

On January 21, 2026, Defendants filed the instant Motion, asking this court to bifurcate discovery into two phases, the first phase addressing the issues of loss and causation of loss, and the second phase solely devoted to the issue of breach, if necessary.[4] ECF No. 80 at 13.

[4] A Scheduling Conference was conducted on November 18, 2025, where a discussion was held concerning the potential bifurcation of discovery between liability and damages, with the former being considered first. ECF No. 77. The court highlights that Defendants' present bifurcation proposal strays from focusing separately on issues of liability and damages.

Defendants believe this approach is appropriate because the issues of loss and causation "involve limited fact discovery" and are conducive to resolution on summary judgment, while the issue of breach "is inherently extremely fact-intensive." *Id.* at 7-9. Accordingly, Defendants reason that initially limiting these proceedings to the "dispositive issues" of loss and causation could obviate the need for extensive discovery into breach. *Id.* at 5-13.

Plaintiffs, however, oppose bifurcation on several grounds, the most fundamental being their contention that the issues of loss and breach are inseparable. ECF No. 82 at 3-7. Because of the interrelatedness of breach and loss, Plaintiffs contend that allowing discovery into one but not the other would be unduly prejudicial to their claims and, furthermore, would result in needless delay. *Id.* at 7-9. Plaintiffs also assert that resolving this case on summary judgment is unlikely because their theories of loss and causation involve fact intensive inquiries and because they seek equitable relief, which does not require a showing of loss. *Id.* at 9-13.

## LEGAL STANDARD

Federal Rule of Civil Procedure 42(b) "grants the Court broad discretion to bifurcate proceedings." *Klassen v. SolidQuote LLC*, No. 23-cv-00318-GPG-NRN, 2023 WL 5497865, at *2 (D. Colo. Aug. 23, 2023). "In determining whether bifurcation is appropriate, courts weigh several factors, including convenience, prejudice, and judicial economy." *Paieri v. Western Conf. of Teamsters Pension Tr.*, No. 23-cv-00922-LK, 2024 WL 4554616, at *12 (W.D. Wash. Oct. 23, 2024); *see also* Fed. R. Civ. P. 42(b). Bifurcation is appropriate when those factors "favor separation of issues and the issues are clearly separable," *F.D.I.C. v. Refco Grp., Ltd.*, 989 F. Supp. 1052, 1090 (D. Colo. 1997) (quoting *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964 (10th Cir. 1993)); "when resolution of a single claim or issue could be dispositive of the

entire case," *Paieri*, 2024 WL 4554616 at *12; or "when it simplifies the issues for the jury and avoids the danger of unnecessary jury confusion," *Jelinek v. Am. Nat'l Prop. & Cas. Co.*, No. C15-779-RAJ, 2016 WL 5795277, at *1 (W.D. Wash. May 23, 2016). "The decision to bifurcate discovery in putative class actions prior to certification is committed to the discretion of the trial court." *True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-cv-02219-JST, 2015 WL 273188, at *1 (N.D. Cal. Jan. 20, 2015). "Regardless of efficiency and separability, however, bifurcation is an abuse of discretion if it is unfair or prejudicial to a party." *Excel-Jet, Ltd. v. United States*, Nos. 07-cv-02181-WYD-BNB, 08-cv-01218-WYD-BNB, 2008 WL 5101182, at *1 (D. Colo. Nov. 26, 2008) (quoting *Angelo*, 11 F.3d at 964); *see also Refco Grp.*, 989 F. Supp. at 1090.

The party seeking bifurcation bears "the burden of proving that the bifurcation will promote judicial economy and avoid inconvenience or prejudice to the parties." *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 101 (N.D. Cal. 1992). District courts ultimately have "broad powers of case management, including the power to limit discovery to relevant subject matter and to adjust discovery as appropriate to each phase of litigation." *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803-04 (Fed. Cir. 1999).

## DISCUSSION

***Separability.*** The court begins its analysis with the issue of separability, which is a necessary—though not sufficient—condition for bifurcating proceedings. *See Refco Grp.*, 989 F. Supp. at 1090. The gravamen of Defendants' argument is that, regardless of whether their processes fell below the standard of care required of a prudent fiduciary, if their ultimate investment decision was objectively prudent, then there was no "causation of loss" and, *a fortiori*, no breach of

ERISA's prudent-investor standard. ECF No. 80 at 7-13; *see also Ramos v. Banner Health*, 461 F. Supp. 3d 1067, 1129 (D. Colo. 2020) ("A fiduciary does not act imprudently 'if a hypothetical prudent fiduciary would have made the same decision.'" (quoting *Tussey v. ABB, Inc.*, 746 F.3d 327, 335 (8th Cir. 2014))). In other words, the objective prudence of the Defendants' investment choices—here, their investment in and retention of the JPMorgan SmartRetirement Series target-date funds ("TDFs") within the Plans—is the lynchpin of Plaintiffs' claims. ECF No. 80 at 7-13. Thus, in Defendants' view, both they and the court could save significant time and expense by avoiding the fact-intensive discovery necessary for the issue of breach by potentially short-circuiting this litigation at issue of loss and causation of loss, which they believe will require minimal discovery. *Id.* at 8-9.

In response, Plaintiffs contend that the breach issue is inseparable from the issues of causation of loss and loss, as all three require the determination of such issues as "(1) when a prudent fiduciary would have discovered the underperformance; (2) when a prudent fiduciary would have removed the underperforming fund; *i.e.*, the period for measuring a loss; (3) what a reasonable alternative investment would be; and (4) whether and when the fiduciaries considered investment alternatives." ECF No. 82 at 6-7. Further, Plaintiffs assert that determining whether Defendants' decision was objectively prudent depends on the circumstances Defendants faced at the time of the decision; thus, evidence related to their alleged breach of the duty of prudence is relevant and must be considered. *Id.* at 6-7; *see also Trauernicht v. Genworth Fin., Inc.*, No. 22-cv-532, 2024 WL 4000258, at *2 (E.D. Va. Aug. 29, 2024) ("To determine what a hypothetical prudent fiduciary would have done, courts consider what others 'in a like capacity' would do

'under the circumstances then prevailing.'" (quoting *Hughes v. Northwestern Univ.*, 595 U.S. 170, 172 (2022))).

The court agrees with Plaintiffs that the issues of loss and causation are not easily severable from the issue of breach. As Plaintiffs correctly note, determining losses under ERISA requires "a showing of 'some causal link between the alleged breach . . . and the loss the plaintiff seeks to recover.'" *Allison v. Bank One-Denver*, 289 F.3d 1223, 1239 (10th Cir. 2002) (quoting *Silverman v. Mut. Benefit Life Ins. Co.*, 138 F.3d 98, 104 (2d Cir. 1998)). The language of § 1109(a) "clearly indicates that a causal connection is required between the breach of fiduciary duty and the losses incurred by the plan." *Brandt v. Grounds*, 687 F.2d 895, 898 (7th Cir. 1982). "This section creates a 'but for' test: but for the acts of the defendant[s], the plan would contain certain assets." *Kahnke v. Herter*, 579 F. Supp. 1523, 1525 (D. Minn. 1984). Defendants offer no satisfactory explanation for how this court can determine what losses Plaintiffs have suffered absent any knowledge of the precipitating conduct, the presence of which is necessary to identify losses in the first instance.

Defendants assert that the issues of loss and causation can be resolved in their favor simply by showing that the TDFs were objectively prudent investment decisions. ECF No. 80 at 9-10. But such a determination necessarily requires considering whether "a hypothetical prudent fiduciary *in the same circumstances as the defendant*, armed with the information that a proper evaluation would have yielded, would not (or could not) have made the same choice." *Pizarro v. Home Depot, Inc.*, 111 F.4th 1165, 1176 (11th Cir. 2024) (emphasis added) (citing *Hughes*, 595 U.S. at 1177)). Thus, determining the objective prudence of Defendants' investments demands an inquiry into the circumstances of Defendants' decisions, including their investment objectives at

the time the decisions were made. *See id.* at 1181. In other words, there must be an inquiry into Defendants' fiduciary processes so that the court can establish an appropriate baseline for considering how a hypothetical prudent investor would act.

Defendants nonetheless argue that Plaintiffs' pleading does "not t[ie] the Loss Issue and Causation of Loss Issue to particular questions about the Defendants' fiduciary processes" and, instead, "fundamentally challeng[es] the performance of the" TDFs. ECF No. 83 at 2-4. But Judge Babcock expressly rejected this argument in his July 24, 2025 order denying Defendants' second motion to dismiss. *See* ECF No. 67 at 14-17. Specifically, he observed that the SAC references the Plans' investment policy statement ("IPS"), which directs Defendants to conduct an annual review of the TDFs' performance as compared to specific benchmarks. *Id.* at 16-17; *see also* ECF No. 59-4 at 6 (stating that investment "performance will be reviewed at least annually"). Indeed, the SAC alleges that Defendants breached their duty of prudence by failing "to carefully monitor and scrutinize the performance of the JPMorgan SmartRetirement Series on an ongoing basis" after initially selecting them for inclusion in the Plans. ECF No. 59 ¶¶ 97-106, 110. Thus, Judge Babcock found that "Plaintiffs have plausibly pled, at a minimum, flawed processes by Defendants in failing to comply with the requirements of the IPS." ECF No. 67 at 17.

Thus, establishing whether Defendants' alleged ongoing failure to review and remove the TDFs from the Plans was objectively prudent under the circumstances is not so simple as Defendants claim; that is because "[t]he appropriate inquiry will necessarily be context specific," and "all relevant evidence should be considered 'as part of a totality-of-the-circumstances inquiry.'" *Trauernicht*, 2024 WL 4000258, at *2 (first quoting *Fifth Third Bancorp v.*

*Dudenhoeffer*, 573 U.S. 409, 425 (2014); and then quoting *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 363 (4th Cir. 2014)).

***Other factors.*** "In determining whether bifurcation is appropriate, courts weigh several factors, including convenience, prejudice, and judicial economy." *Paieri*, 2024 WL 4554616, at *12.

Despite Defendants' assurances that bifurcation could result in avoidance of significant unnecessary expenditures, ECF No. 80 at 5-7, Plaintiffs reach the opposite conclusion, arguing that bifurcation would lead to repetitive motions practice and needless delay, ECF No. 82 at 7-9.

The court is inclined to agree with Plaintiffs. Defendants' contention that bifurcation will promote judicial efficiency is entirely speculative, as it necessarily depends on the assumption that Defendants will prevail on a future motion for summary judgment on the issues of loss and causation. Otherwise, the parties will be forced to complete two rounds of discovery, with duplicative scheduling, drafting, and search efforts. But "it is well established that discovery ordinarily should not be denied because it relates to a claim or defense that is being challenged as insufficient." *Admiral Ins. Co. v. Versailles Med. Spa, LLC*, No. 20-cv-00568-JCH-TOF, 2021 WL 106273, at *3 (D. Conn. Jan. 12, 2021) (quoting 8 Wright & Miller's *Federal Practice & Procedure* § 2008 (3d ed.)). This court will not take so drastic a step as bifurcation merely because Defendants are confident they will prevail on the issues of loss and causation.[5] Not only is such an approach imprudent, as it pins the management of this case to an uncertain outcome,

[5] By the same token, the court finds Plaintiffs' argument that they need not show loss to obtain equitable relief unconvincing. ECF No. 82 at 9. Courts in this District have recognized a split of authority on the issue of whether equitable relief is available under ERISA absent a showing of loss. *See Fayeulle v. Cigna Corp.*, No. 15-cv-01581-JLK, 2016 WL 9752312, at *4 (D. Colo. June 29, 2016) (noting "there is contrary authority to the effect that a plaintiff must demonstrate injury in order to have standing to seek equitable relief under" ERISA, and collecting cases).

but it is also prejudicial to Plaintiffs. *Ravarino v. Voya Fin., Inc.*, No. 3:21-cv-01658-OAW, 2025 WL 969674, at *7 (D. Conn. Mar. 31, 2025) ("Litigants have the right to discover non-privileged information that is proportional to the needs of the case and relevant to a live claim, and they do not lose this right just because their adversary thinks it has a compelling defense." (citations omitted)).

The Supreme Court cases that Defendants cite do not alter this conclusion. Defendants insist that the Court's decision in *Cunningham v. Cornell*, 604 U.S. 693 (2025), counsels that district courts should do all they can to ensure the expeditious resolution of ERISA cases, up to and including bifurcation. ECF No. 80 at 5-7. But *Cunningham* dealt with a very specific context—striking the balance between requiring plaintiffs to plead satisfaction of ERISA's exemptions for prohibited transactions and allowing cases to proceed beyond the pleading stage where the claims are clearly barred by an exemption. 604 U.S. at 707-09. Whether an exemption applies is a more definite condition than the fact-intensive issue of the objective prudence of an investment. *Cf. Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 919 (8th Cir. 1994) ("[T]he causal connection between breach and loss, like breach itself, is a fact-intensive inquiry that is not susceptible to summary judgment in this case."). Nor does the other Supreme Court precedent to which Defendants point support the conclusion that discovery ought to be stayed pending resolution of the fact-driven question of objective prudence. *See Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996) (stating that courts "may have to take account of . . . Congress' desire to offer employees enhanced protection for their benefits, on the one hand, and, on the other, its desire not to create a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering" benefit plans); *Fifth Third Bancorp*, 573 U.S. at

424-25 (recognizing petitioners were "seeking relief from what they believe are meritless, economically burdensome lawsuits" but concluding that a categorical bar to certain claims was improper, opting instead for "careful, context-sensitive scrutiny of a complaint's allegations").

At this juncture, discovery has been delayed for multiple years, and Defendants seemingly blame Plaintiffs for the time period for which they seek to obtain discoverable material. This case was initially filed in 2023, and the present Motion represents Defendants' third attempt to curtail and prevent discovery efforts by the parties. As the issues brought in this case are clearly intertwined and inseparable in the way which Defendants propose, "any advantage that bifurcation might have would be outweighed by the disputes and motion practice concerning where to draw the line." *Riley v. PK Mgmt., LLC*, No. 18-cv-2337-KHV-TJJ, 2019 WL 1438633, at *2 (D. Kan. Apr. 1, 2019). Other courts faced with determinations of whether a breach of fiduciary duties occurred have refused to bifurcate discovery where "[d]iscovery was already stayed for more than a year (by agreement of the parties) while the motion to dismiss was pending, and bifurcated discovery [was] likely to lead to even more delay." *Tyrakowski v. Conagra Brands Inc. Pension Plan*, No. 23-cv-0894, 2025 WL 4054410, at *2 (N.D. Ill. Feb. 24, 2025). Thus, the court finds that the proposed bifurcation of discovery would hinder judicial economy.

## CONCLUSION

Consistent with the foregoing, it is respectfully **ORDERED**[6] that the Motion to Bifurcate Discovery (ECF No. 81) is **DENIED**.

---

[6] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written

DATED: August 26, 2026

BY THE COURT:

Susan Prose
United States Magistrate Judge

objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *see also Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objective and the consequences of failing to object").